Draíce, Oh. J.,
delivered the opinion of the court:
On the 7th of January, 1780, James Broadns was commissioned by Congress as an ensign in the Second Virginia Begiment in the Army of the United States, to take rank as snch from the 25th of September, 1779.
His administrator de bonis non brings this suit to recover five years’ full pay of an ensign, which he alleges became due to Broadns under and in virtue of certain resolutions adopted by Congress.
The first of those resolutions was adopted on the 3d of October, 1780 (3 Jour. Cong., 532), and embodied an arrangement for the reformation of the Army. At its close appears the following :
“And whereas, by the foregoing arrangement, many deserving-officers must become supernumerary, and it is proper that regard be had to them:
“Resolved, That from the time the reform of the army takes place, they be entitled to half pay for seven years, in specie, or other current money equivalent, and also grants of land at the close of the war, agreeably to the resolution of the 16th of September, 1776.”
The “half pay for seven years,” here promised to supernumerary officers, was, by a resolution of October 21, 1780 (3 Jour. Cong., 538), changed to “half pay for life.”
On the 22d of March, 1783, a further resolution was passed by Congress, which is set forth below, and which the claimant alleges gave to supernumerary officers “five years’ full pay, instead of the half pay for life promised by the resolution of the 21st of October, 1780.” Whether that was its effect need not be here considered, for there is no evidence in the case tending to prove that Broadus was reduced as a supernumerary. If he is entitled at all to the “five years’ full pay,”it is because he was not so reduced, but actually continued in service to the end of the war. Whether he is entitled on that ground, will now be examined.
The resolution of March 22, 1783 (4 Jour. Cong., 178), was in these words, so far as it is necessary for present consideration to quote them:
“That snch officers as are now in the service and shall continue therein until the end of the war, shall be entitled to receive the amount of five years’ full pay in money or securities, *417 on interest at six per cent, per annum, as Congress shall find most convenient, instead of the half pay promised for life by the resolution of the 21st day of October, 1780; the said securities to be such as shall be given to other creditors of the United States: provided it shall be at the option of the lines of the respective States, and not of officers individually in those lines, to accept or refuse the same; and provided, also, that their election shall be signified to Congress through the Commander-in-chief, from the lines under his immediate command, within two months, and through the commanding officer of the Southern army, from those under his command, within six months from the date of this resolution.”
On the 31st of October, 1783, the Secretary of War reported to Congress that the Virginia line, among others, had agreed to accept the five years’ full pay, in lieu of the half pay for life.
It follows that if Broadus was in service on the 22d of March, 1783, and continued therein to the end of the war, he thereby became entitled to the five years’ full pay, in virtue of that agreement of the Virginia line.
The first question, therefore, for present decision, is whether he was in service at that date. The claimant insists that he was in the service from the time he was commissioned to the end of the war.
To sustain this position no legal evidence whatever was offered at the trial; but, on the contrary, the evidence presented, seems to us to lead directly to the conclusion that he was not in service on the 22d of March, 1783, but must have left it in 1782, or earlier.
It appears that on the 19th of February, 1784, a military warrant for 2,666§- acres of laud was issued by the State of Virginia to Broadus “for three years’ service as an ensign in the Continental line of the ^Revolutionary war.” This statement of the length of his service ought certainly to be received as prima facie evidence of that fact, and it shows that his service began either at the date of his commission, January 7, 1780, or at the date, September 25, 1779, from which he took rank as ensign. Taking either date, his three years’ service expired before the passage of the resolution of 22d of March, 1783.
But there is other evidence tending to prove that his service did not, in fact, extend through even three years. To the proper understanding of the force of that evidence it is necessary to *418 present a portion, of an act passed by the General Assembly of Virginia in 1781, as follows:
“Whereas, from the depreciation of paper money, and other concurring circumstances, the pay of the officers and soldiers of the Virginia line on Continental establishment hath been altogether inadequate to their service: To the end, therefore, that justice may be done and redress afforded as far as the present circumstances of the State will admit, Be it enacted by the General Assembly, That the whole pay and subsistence of the officers * * * of the Virginia line in continental service shall be made equal to specie from the 1st day of January, 1777; that the auditors of public accounts do settle and adjust the pay and accounts of the said officers * * * from the said 1st day of January, 1777, to the last day of December, 1781. And the said auditors are hereby authorized and directed to estimate in specie all sums of continental and State money received by the said officers, * * * on account of their pay' within the period aforesaid, agreeable to the dates of their receipts respectively, and according to a scale of depreciation hereinafter mentioned and contained. And printed certificates (payable on or before the 1st day of January, 1785, with interest at the rate of six per centum per annum) expressing the sum in specie, shall, by the said auditors, be individually given to the said officers # * * for the respective balances that may appear to be due them by the public.” (10 Hening’s Va. Stat. L., 462.)
Every presumption is, that, if Broadus presented a claim under this act, it would cover the time up to “the last day of December, 1781,” if he served till that day. He did present a claim, and on the 2d of April, 1783, it was settled and adjusted by the auditor, who allowed him £95 14 as the balance of his full pay as ensign from October 2, 1779, to December 2, 1780. And so the time for which he was allowed stopped one year and twenty-nine days short of the period for which he was entitled to allowance, if he had served so long.
Thus his own acts in regard to the land grant and the settlement of his account for pay, though they leave the exact period of his service uncertain, seem to establish conclusively that he was not in service on the 22d of March, 1783, and that therefore he cannot be entitled to the five years’ f ull pay.
The claimant’s petition is dismissed.
Nott, J.,was not present at the trial of this cause, and took no part in its decision.